IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| City of Cincinnati, | : | Case No. 1:16-cv-488 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Kentucky Transportation Cabinet for the | : | Order Dismissing Case With Prejudice |
| Commonwealth of Kentucky, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff

City of Cincinnati ("Cincinnati") (Doc. 24) and the cross Motion for Summary Judgment filed

jointly by Defendants City of Newport, Kentucky ("Newport") and Newport Southbank Bridge

Company ("Bridge Co.") (Doc. 26). Cincinnati originally filed suit against Newport, Bridge Co.,

and a third defendant, Kentucky Transportation Cabinet for the Commonwealth of Kentucky

("Kentucky"), which has been dismissed from this action on sovereign immunity grounds. (Doc.

19.) This case arises from deferred maintenance on a portion of the Louisville & Nashville

Bridge ("Bridge")—more colloquially known in the Cincinnati area as the Purple People Bridge.

For the reasons that follow, this case will be **DISMISSED WITH PREJUDICE**.

Although this matter is before the Court on summary judgment pleadings, the Court must

first address its concerns regarding jurisdiction in this case for want of a case or controversy

between the parties. Where jurisdiction is lacking, a federal court must dismiss the case *sua*

*sponte*. *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir. 2000) (citing Fed. R. Civ.

P. 12(h)(3)). "All models of cases and controversies begin with the premise that there must be a

conflict of interest between at least two genuinely adversary parties. Adversariness is desired in

part to establish the need for any adjudication—courts have defined judicial power in relation to the need to resolve conflicting interests." C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3530 (3d ed.) (emphasis added). "The principle remains today that if both parties affirmatively desire the same result, no justiciable case is presented." *Id.* (citing *Moore v. Charlotte-Mecklenburg Bd. of Ed.,* 402 U.S. 47, 48 (1971) (finding no case or controversy within the meaning of Art. III of the Constitution where both litigants desired the same result)); *Lord v. Veazie,* 49 U.S. 251, 255–56 (1850) (dismissing case where there was no real conflict of interest).

## A. Claims Must Be Dismissed

This case is unusual in that the "adversaries" here, Cincinnati, on one hand, and Newport and Bridge Co., on the other, have no dispute that *Kentucky*, a *dismissed party* to this action, is responsible for the contested Bridge repairs.[1] This "responsibility" appears to be untethered to the actual claims pending in this action. As expounded upon more fully herein, the three claims pled in the Complaint are not viable.

The Complaint asserts three causes of action: (1) violation of the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 306108; (2) breach of contract; and (3) violation of the

---

[1] Of additional concern to the Court, the parties readily reach this conclusion based upon their interpretation of an incomplete record. For example, critical documents are *not* in the record, including the instrument by which Kentucky purportedly became an "owner" of the Bridge in 1935. In support of this "fact," Cincinnati erroneously relies upon a 2004 deed and an "expert" report of Travis W. Jeric, an employee of Cincinnati. (Cincinnati's Proposed Undisputed Facts, Doc. 25 at PageID 331.) In addition, many of the property documents in the record relating to the Bridge's legal boundaries contain antiquated maps, parcel numbers, and coordinates. Were this Court to have jurisdiction in this matter, expert testimony would be necessary to parse out these complex documents.

Cincinnati Building Code. (Doc. 1.) The Complaint seeks relief in the form of declaratory judgment and injunctive relief.

In its summary judgment filings, Cincinnati concedes its NHPA claim. (Doc. 30 at PageID 385.) Thus, this claim is no longer at issue.

As to the breach of contract claim, Cincinnati asserts in the Complaint that a 1966 Quitclaim Deed is a valid and enforceable contract between Cincinnati and *Kentucky,* whereby Kentucky agreed to provide for major maintenance to the Bridge. (Doc. 1 at PageID 9.) By failing to repair the Bridge, Kentucky breached its promise to Cincinnati. (*Id.*) Kentucky has been dismissed from this action, and the claim is not pled against either Defendant. Accordingly, the breach of contract claim plainly is no longer before this Court.

As to the Cincinnati Building Code violation claim, Cincinnati asserts in its Complaint that it issued notices of violation to Newport and Bridge Co. regarding the condition of the Bridge and the deteriorated conditions have not been fixed. (*Id.* at PageID 10.) Cincinnati asserts the failure to repair the Bridge violates Cincinnati Building Code § 1119-03.3.1, which requires that "[a]ll structural members shall be maintained free of deterioration, and capable of safely bearing imposed dead and live loads."[2] Cincinnati did not identify and the Court could not locate any statutory authority for a civil enforcement action for violation of the Cincinnati Building Code. Rather, the Cincinnati Building Code incorporates the "Penalties" provision of Cincinnati Building Code § 1101-51, *see* § 1119-1.2, which outlines offenses that constitute *misdemeanors.* As such, the claim must be dismissed.

---

[2] As Kentucky has been dismissed from this action, the allegations against Kentucky are no longer before this Court and not included here.

Furthermore, even if this claim were appropriately brought, Cincinnati, Newport, and Bridge Co. share the same position that *Kentucky* is responsible for the Bridge repairs, and thus violated the Cincinnati Building Code. (*Compare* Doc. 27 at PageID 371 *with* Doc. 30 at PageID 386.) As noted *supra*, the Court has serious concerns about the completeness of the record in this case from which that conclusion may be drawn. However, and regardless of the efficacy of the parties' conclusion, all parties agree. Thus, there is no adversarial case-or-controversy here.

## B. Availability of Declaratory Judgment

Because Cincinnati's request for declaratory judgment appears to be the driving force of this litigation, the Court finds it necessary to briefly address it now. Cincinnati repeatedly argues the Court should declare that Kentucky is the party responsible for Bridge repairs, as if a request for declaratory judgment is a standalone claim.[3] It is not. As the Court has found no case or controversy before it, the availability of the remedy of declaratory judgment is simply inappropriate. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only" and does not extend the jurisdiction of federal courts.) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)).

Even if the remedy of declaratory judgment were available, a Court may exercise its discretion to refuse jurisdiction over a declaratory judgment action, and one of the factors to be

---

[3] Cincinnati argues that under "the four corners of the controlling contracts and property instruments, the obligation to provide for major maintenance of the Bridge did not transfer to Newport, the Bridge Company, or any other entity" and "remains Kentucky's." (Doc. 24 at PageID 187.) Cincinnati also asserts that it "does not seek to hold Newport or the Bridge Company responsible for repairing the Bridge, but, rather, seeks declaratory relief in the form of a determination as to which entity bears this major maintenance responsibility under the controlling instruments. As exhaustively detailed in Cincinnati's motion and the exhibits thereto, that obligation belongs to Kentucky." (Doc. 30 at PageID 385.)

4

considered is whether the judgment would settle a *controversy*. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–90 (1995) (a district court has broad discretion in determining whether to dismiss an action seeking a declaratory judgment); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004); (listing the factors[4] courts in the Sixth Circuit consider in exercising discretion to invoke jurisdiction over a declaratory judgment action).

There is no controversy between the parties here, and the Court is troubled by the attempts to prod this Court to issue a declaratory judgment against a nonparty, particularly in light of the fact that the claims have no merit. Although Cincinnati and Newport and Bridge Co. are listed as adversaries in the case caption, their positions are far from adversarial. To the contrary, their positions are so aligned that the Court is concerned this action borders on collusion to affect the rights of a third party. That third party—Kentucky—has been dismissed from this action and as such, has no opportunity or obligation to present its evidence and arguments in this matter. Furthermore, the Court is concerned that the lack of a truly adversarial proceeding has hampered the effort by the parties to present a full and adequate record. To the extent the parties seek to hold Kentucky liable for Bridge repairs, this is not the appropriate forum, nor a declaratory judgment by this Court the appropriate method.

For these many reasons, the Court has no power to issue declaratory judgment in this action.

---

[4] Courts in the Sixth Circuit consider five factors in exercising their discretion to invoke jurisdiction over a declaratory judgment action, including whether: (1) the judgment would settle the controversy; (2) the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) there is an alternative remedy that is better or more effective. *Id.*

Accordingly, finding this Court is without jurisdiction, this action is **DISMISSED**

**WITH PREJUDICE**.

IT IS SO ORDERED.

Judge Susan J. Dlott
United States District Court